[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves an Application to Vacate an Arbitration Award brought by the plaintiff (hereinafter also "Nesbitt") and an Application to Confirm an Arbitration Award brought by the defendant (hereinafter also "Magnolia"). The Arbitration Award (hereinafter also "Award") was issued by arbitrator, Lawrence R. Frazier, (hereinafter also "Arbitrator") under the auspices of the American Arbitration Association (hereinafter also "AAA") by decision dated April 7, 1998. The Award was in favor of Magnolia in the amount of $107,714.00 plus certain costs and fees. The Application to Vacate was filed by Nesbitt on April 24, 1998 and the Application to Confirm was filed by Magnolia on May 7, 1998. The parties each filed memoranda prior to the hearing held before this court on November 9, 1998 and subsequent thereto.
It should be noted that although the court has been furnished transcripts of the three (3) day hearing before the Arbitrator, the original exhibits were apparently destroyed by the Arbitrator. However, counsel for both parties have agreed upon copies to reconstruct the exhibits and have agreed upon the set of exhibits furnished to the court. Missing is the videotaped deposition of Roger Anderson, an agent of the plaintiff, Nesbitt, CT Page 15545 which was reviewed by the arbitrator. Nesbitt's counsel has moved to supplement the record with an affidavit of Mr. Anderson to which Magnolia has objected.[1]
 FACTUAL BACKGROUND
In 1994, the United States Navy proceeded with the construction of a new one story 32,000 square foot building in Bethesda, Maryland to be known as a Child Development Center. The building was to consist primarily of twenty-two classrooms and administrative offices. The general contractor was Coakley Williams Construction Co., Inc. of Greenbelt, Maryland (hereinafter also "Coakley"). Magnolia, of Washington, D.C. was an experienced plumbing and heating, ventilating and air conditioning (hereinafter also "HVAC") contractor who was retained by Coakley as a subcontractor to Coakley to do the HVAC work. Nesbitt, now located in South Windsor, Connecticut, was an experienced manufacturer of heating, ventilating and air conditioning units used commercially in office buildings and school buildings. By purchase order dated December 12, 1994 with attachment B setting forth "General Conditions" in response to a quote from Nesbitt dated October 25, 1994, Magnolia ordered twenty-two Nesbitt unit ventilators designed to be installed in the ceilings of the project building to provide heating and cooling for each of the rooms. Nesbitt claimed that on or about January 9, 1995 it sent to Magnolia a letter acknowledging receipt of the purchase order and setting a tentative shipping date of January 17, 1995. Nesbitt claimed that the reverse side of said letter contained its own Terms and Conditions of Sale although they were not referenced on the front page. Magnolia denied it had received the January 9th letter with Terms and Conditions on the reverse side. Nesbitt claimed that it sent a letter signed by Roger Anderson to Magnolia on January 13, 1995[2] by fax in which he sent a copy of the January 9, 1995 letter "which was previously faxed to you, along with its two enclosures". Mr. Anderson's letter stated that he was including a copy of Nesbitt's standard terms and conditions which he said were different from or in conflict with Magnolia's purchase order, and further stated that failure to object in writing to Nesbitt's Terms and Conditions would constitute acceptance. The issue of when Nesbitt's terms and conditions were sent and received (January 9, 1995, January 13, 1995 or later) was a contested issue before the Arbitrator. After delivery of the units, Magnolia claimed they were defective. Negotiations eventually broke down, and Magnolia sued Nesbitt in the Circuit CT Page 15546 Court for Montgomery County, Maryland, which suit has been stayed pending arbitration. A Stay of Proceedings and Stipulation was approved by the court. The Stipulation dated April, 1997 stated, inter-alia, "The parties agree to submit to arbitration the issues in dispute in this proceeding pursuant to paragraph 12[3] of the Terms and Conditions set forth on the reverse side of defendant's acknowledgment of plaintiff's purchase order dated January 9, 1995. Defendant agrees to file the demand for arbitration no later than Friday, April 18, 1997"[4]. Lawrence R. Frazier, an architect, was duly appointed the sole Arbitrator by the AAA. Hearings were held on January 20, 21 and February 19, 1998. On April 7, 1998, the Arbitrator issued an award in favor of Magnolia in the amount of $107,714.00 plus expenses. The Application to Vacate the Award was filed on April 24, 1998, and the Application to Confirm the Award was filed on May 7, 1998. The parties have each filed several memoranda to this court, and oral argument was heard on November 9, 1998.
Nesbitt brings this Application to Vacate Arbitration Award pursuant to Section 52-418 of the General Statutes upon the following grounds:
 "1. The arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." This is set forth in said Section 52-418(a)(4).
 "2. The award evidences manifest disregard of the statutory or common law.
 3. The arbitrator failed to review, interpret and apply the requirements of the contract which spells out the relationship between the parties."
 STANDARD OF REVIEW
The determination of the issues before this court has to be based upon the evidence submitted to it with the briefs of the parties. Further, it is plaintiff's burden to produce sufficient evidence to invalidate the award. Awards based upon consensual arbitration are subject to only minimal judicial intervention. See Metropolitan District Commission v. AFSCME, 37 Conn. App. 1
(1995). Every reasonable presumption and intendment must be indulged in favor of the award. Cashman v. Sullivan Donegan,P.C., 23 Conn. App. 24 (1990). Unless the submission provides CT Page 15547 otherwise, an Arbitrator has authority to decide factual and legal questions, and courts will not review the evidence, or where the submission is unrestricted, the Arbitrator's determination of legal questions. O G/O'Connell Joint Venturev. Chase Family Limited Partnership, 203 Conn. 133 (1987). "When the scope of the submission award is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." SCRRA v. AmericanRe-Fuel Co. of Southeastern Connecticut, 44 Conn. Sup. 482, 484,485 (1997) aff'd, 44 Conn. App. 728 (1997). The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of the issues, reserving explicit rights, or conditioning the award on court review." Id. 485.
A leading case concerning the powers of the court to vacate an arbitration award is Garrity v. McCaskey, 223 Conn. 1 (1992). An arbitration award may be vacated on grounds of manifest disregard of the law under § 52-418(a)(4) only when it "manifests an egregious or patently irrational application of the law." [This] ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.Id. at 10.
 "Because we do not review an arbitrator's decision merely for errors of law, in the present case we do not decide the merits of the defendant's argument regarding the proper application of the statutes of limitations to the plaintiffs securities claims. Even if the arbitrators were to have misapplied the law of governing statutes of limitations, such a misconstruction of a law would not demonstrate the arbitrators' egregious or patently irrational rejection of clearly controlling legal principles. The defendant's claim in this case falls far short of an appropriate invocation of § 52-418(a)(4) for a manifest disregard of the law. . . . The defendant has not demonstrated anything more than his disagreement with the arbitrators' interpretation and application of established legal principles. . . . Acceptance of his argument would turn every disagreement with arbitrators' rulings of law into an allegation of manifest disregard of the law. We have never construed § 52-418(a)(4) so broadly and we decline to do so today."
Id. at 11-13 (emphasis added). CT Page 15548
". . . [where] the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of theagreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will theyreview the arbitrators' decision of the legal questionsinvolved." Trumbull v. Trumbull Police Local, 1745,1 Conn. App. 207, 213 (1984). (emphasis added).
 ISSUES 1. Was the award in accordance with the submission? Was thesubmission unrestricted?
The demand for arbitration states, inter-alia: "Please see Complaint filed by Respondent (Magnolia) in Circuit Court, Montgomery Count, Maryland, Case No. 163930 and the Stipulation and Stay of Proceedings approved by the Court . . . Adjudication of claims in Respondent's Complaint".
Paragraphs 6 and 7 of the Complaint read as follows.
 "6) Plaintiff subcontracted for certain work and materials to be supplied by the Defendant as identified in the Purchase Order Request dated December 12, 1994, a copy of which is attached hereto and incorporated herein as Exhibit A.
 7) Said Contract called for the purchase by the Plaintiff from the Defendant through its `Nesbitt' division various equipment for a total purchase price of $51,200.00." (emphasis added).
The court concludes from that language that Magnolia was putting before the Arbitrator its claim that the contract was the purchase order of December 12, 1994 in response to a quote from Nesbitt.
Further, the court concludes that the language in the Stipulation and Stay of Proceedings[5] indicates that the reference to paragraph 12 of the Terms and Conditions was not a statement by Magnolia that the parties were bound by the other Terms and Conditions and was not a statement by Magnolia that the acknowledgment of the purchase order even with the Terms and CT Page 15549 Conditions set forth constituted a contract between the parties. The court recognizes that paragraph 12 does refer to "this contract". However, based upon the totality of the evidence, including the submission of the complaint as aforesaid and the Stipulation referring only to paragraph 12 and referring to it in the Stipulation not as part of the contract but as "paragraph 12 of the Terms and Conditions set forth on the reverse side of Defendant's acknowledgment of plaintiff's purchase order dated January 9, 1995," (emphasis added) it was entirely reasonable for the Arbitrator to conclude that it was up to him to decide what contract was binding. He did decide that a contract between the parties was formed and became binding when the Defendant, Magnolia, mailed its purchase order dated December 12, 1994 in response to a quotation from Nesbitt dated October 25, 1994. The Plaintiff has agreed that this was the Arbitrator's decision by virtue of the footnote on page 6 of its brief dated October 23, 1998. Accordingly, this court concludes that the demand for arbitration and/or submission was unrestricted. Thus, the Arbitrator did have a right to decide when and how the contract was created, when it became binding and the contents of same.
Nesbitt also claims in said footnote that the fact that the Defendant received the Plaintiff's Terms and Conditions of Sale was not even an issue during the arbitration. However, the court concludes otherwise. There was substantial testimony, some of it conflicting, as to whether and when the Terms and Conditions of Sale were received by the Defendant, Magnolia. However, there does seem to be agreement between the parties that regardless of when the Defendant received the Plaintiff's Terms and Conditions of Sale, the Arbitrator decided that the binding contract was formed on December 12, 1994 and that, therefore, the said Terms and Conditions of Sale were not part of the contract.
 2. Should the Arbitrator have applied the Uniform CommercialCode to this arbitration?
Plaintiff claims that Connecticut's Uniform Commercial Code controls this case. In fact, in the same footnote, Plaintiff claims that "This is the gravamen of the Plaintiff's Motion to Vacate." Plaintiff cites specifically C.G.S. § 42a-2-207 which states in pertinent part:
 "Sec. 42a-2-207. Additional Terms in Acceptance or Confirmation. (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a CT Page 15550 reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
 (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." (emphasis added).
The Plaintiff claims that under this section the Terms and Conditions which were allegedly sent to the Defendant on the reverse side of the January 9, 1995 letter from Nesbitt to Magnolia acknowledging receipt of the purchase order are the additional terms which were added to the Contract and cites paragraph 11 which provides in pertinent part as follows:
 ". . . Claims by either party must be made in writing within forty-five (45) days after the occurrence of the event giving rise to such Claim, or within forty-five (45) days after claimant knew or should have known of the condition giving rise to the Claim, whichever is later . . . If the Claimant does not notify the other party of the Claim (including a claim for a continuing condition), within forty-five (45) days, Claimant shall be forever barred from asserting such Claim through arbitration or through a court of competent jurisdiction . . ."
The court rejects this claim made by the Plaintiff for two reasons:
1. The statute, section 2(b), provides for an exception, namely terms and conditions that ". . . materially alter it (the Contract)". The forty-five day limitation for submission of claims was not in the purchase order or the quote or Magnolia's Terms and Conditions which were part of the purchase order. Because that limitation alone, which the Plaintiff cites in moving to vacate the arbitration award, is a material alteration of the contract, C.G.S. § 42a-2-207 does not apply.
2. The Plaintiff did not raise the application of the Uniform Commercial Code before the Arbitrator. In oral argument, in this CT Page 15551 court, the Plaintiff conceded that. The first time the Plaintiff raised this issue as to whether the Arbitrator failed to properly apply the Uniform Commercial Code was in its Reply Brief to this court. Under the case of Saturn Construction Co., Inc. v. PremierRoofing Co., Inc., 238 Conn. 293, 304-305 (1996), the court set forth a three part test to determine whether to vacate an arbitration award based upon "manifest disregard of the law":
"The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable."
The first two elements have not been satisfied since the Plaintiff failed to bring to the attention of the Arbitrator the Uniform Commercial Code.[6] Element number three has not been satisfied because this court finds that the Uniform Commercial Code was not clearly applicable because of the exception of materially altering the contract as described above.
Accordingly, the court finds that the arbitration award does not evidence manifest disregard of the statutory or common law. Further, the Arbitrator was permitted to interpret the law and the provisions of the contract, including the existence of and content of the contract, and, therefore, the court finds that the Arbitrator did not exceed his powers or so imperfectly execute them that a mutual, final and definite award upon the subject matter was not made. Further, the court rejects the claim of the Plaintiff that the arbitrator failed to review, interpret and apply the requirements of the contract which spells out the relationship between the parties.
The Plaintiff's Motion to Supplement Record dated November 16, 1998, is hereby granted. The supplement to the record is, in effect, an affidavit of Roger A. Anderson dated November 3, 1998 which is, as claimed by Plaintiff, to replace the videotaped deposition of him which was presented to and watched by the Arbitrator, but which videotaped deposition was subsequently destroyed. The court has no problem with accepting the affidavit CT Page 15552 to be made part of the record.
The court has reviewed the transcripts of the arbitration proceeding and the exhibits and reviewed the briefs of the parties as well as a transcript of the oral argument of November 9, 1998 and concludes that there was conflicting testimony on many points which were disputed by the parties. However, the findings of fact by the Arbitrator were based upon his personally listening to witnesses, reviewing the exhibits presented and the videotaped deposition of Mr. Anderson, etc. This court will not interfere with the Arbitrator's assessment or judgment of the credibility of the witnesses. As is often stated to juries, the finder of fact has the discretion of believing all of a witness's testimony, none of it or believing part of it and rejecting the rest of it. The Arbitrator exercised his discretion in doing so. Further, the court finds that the Arbitrator did not apply the law or find the facts in a manner that manifests an egregious or patently irrational application of the law. As stated earlier under STANDARD OF REVIEW, the Arbitrator has the authority to decide factual and legal questions. Every reasonable presumption and intendment must be indulged in favor of the award. The court concludes that the Plaintiff has not sustained its burden of producing sufficient evidence to invalidate the award.
The court notes that the Arbitrator did not award attorney's fees in his award dated April 7, 1998, and further, there is no provision of which the court is aware under which it can authorize or award attorney's fees in this matter. Therefore, it will not award same.
Based upon the totality of the evidence, and for the reasons herein above stated, the Application to Vacate Arbitration Award dated April 22, 1998 is denied, and the Application to Confirm Arbitration Award dated May 5, 1998 is granted.
Rittenband, J.